UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                    CASE NO. 17-20465
                                        HON. DENISE PAGE HOOD

v.

D-5 JOSEPH BETRO,

      Defendant.
_____/

## ORDER DENYING DEFENDANT'S
## MOTION FOR PROBABLE CAUSE HEARING
## REGARDING ASSETS SUBJECT TO FORFEITURE [#315]

**I.    Introduction**

Defendant Joseph Betro is charged in multi-count Indictment with one count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §1349, and four counts of Health Care Fraud, in violation of 18 U.S.C. §§1347 and 2. Defendant is a medical doctor and is licensed in the State of Michigan, and he currently resides in Michigan with his wife and he has two adult children. His sole source of income to support himself and family was by virtue of his employment as a physician. At Defendant's first appearance on July 12, 2017, Magistrate Judge Stafford entered an Order Setting Conditions of Release, including ordering that Defendant not "participate in the direct or indirect billing of any federal health care program" nor

1

write prescriptions for controlled substances. This Court has twice rejected Defendant's request to be able to work (in one form or another) as a doctor billing a federal health care program or writing prescriptions for controlled substances.

On July 12, 2017, Magistrate Judge Stafford also concluded there was probable cause to believe that seven bank accounts controlled by Defendant are subject to civil and criminal forfeiture to the Government. The basis for her ruling was that funds exceeding $1.9 million were paid from Medicare to Defendant (through Tri-County Network/Tri-County Physicians Group (collectively, "Tri-County")). Those funds were paid by Tri-County to Defendant's Credit Union One Account 0104 and then redistributed to the following accounts of Defendant:

1. Comerica Bank Checking Account No. 1852711405, held in the Name of Joseph Betro DO FACEP, PLLC;
2. Comerica Bank Checking Account No. 6824780271, held in the name of Joseph Betro DO FACEP, PLLC, 401K Trust;
3. Comerica Bank Checking Account No. 9415166132, held in the name of Joseph Betro DO FACEP, PLLC;
4. Comerica Bank Checking Account No. 6815675720, held in the Names of Josephand Judith BETRO;
5. TD Ameritrade Investment Account No. 874-009792, Held in the name of Joseph R. Betro IRA TD Ameritrade Inc.;
6. Fidelity Management Trust Account No. 216-057444, held in the name of Joseph Betro; and
7. Fidelity Investments Account No. Z48-751518, held in the name of Joseph Betro.

The seizure or freezing of those accounts involved amounts totaling approximately $534,000.00 ("Subject Funds").

Magistrate Judge Anthony P. Patti later found probable cause to seize a Land Rover vehicle owned by Defendant ("Subject Vehicle"). Defendant subsequently agreed to the entry of a stipulated interlocutory sale order, resulting in the sale of the Subject Vehicle for $32,500, with the proceeds being turned over to the U.S. Marshals Service. In total, the United States has seized or frozen approximately $566,500 (according to the Government) or $630,100 (according to Defendant) of Defendants' assets that are subject to criminal and/or civil forfeiture.

Defendant has moved the Court for a probable cause hearing regarding his assets subject to forfeiture. [Dkt. No. 315] The Government filed a response, but Defendant did not file a reply. A hearing was scheduled for (and eventually held on) January 16, 2019. Shortly before the January 16, 2019 hearing, the Government filed a Supplemental Brief, to which Defendant filed a response.

## II. Background

Defendant admits to receiving over $1.9 million from the Tri-County Network, one of the entities alleged to have engaged in fraud *vis a vis* federal health programs. The Superseding Indictment specifies that property is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7) as it relates to Counts 1 and 3, the two counts in which Defendant is charged. 18 U.S.C. §981(a)(1)(C) provides: "Any property, real or personal, which constitutes or is derived from proceeds traceable" to the charged

offenses is subject to civil forfeiture. The criminal forfeiture statute, 18 U.S.C. §982(a)(7), provides: "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."

Defendant states that, in order to pay attorney fees for representation in this case, to avoid foreclosure, and to obtain money to live on during the pendency of this case, he has listed his family's primary residence (the "Subject Property") for sale. The Government has recorded a putative interest in the Subject Property in the form of an Affidavit of Interest and *lis pendens*, giving notice that the Subject Property may be subject to criminal and civil forfeiture in the future. To date, the Government has not seized the Subject Property.

Defendant claims that the Government has restrained approximately $630,101.34 of his and his wife's assets. *See* Dkt. No. 315, Ex. A. Defendant states that they have no current income since he is unable to work as a physician. Defendant indicates that, aside from a modest accumulation of monetary gifts from family to help pay the costs of living, he has no ability to pay hired counsel without the proceeds from the sale of their residence, or the release of other cash from pretrial restraint.

In the Government's supplemental memorandum, it identified three Defendant

assets that Defendant did not previously disclose and of which the Government was unaware. Those assets included two pieces of real property in New York owned by Defendant. One property was purchased in 2013 and has a full market value of $93,000 (as projected by the county in which it sits), and it has no liens on it (the "Sylvan Beach Property"). The other property was purchased in July 2016 for $485,000, with a $388,000 mortgage/lien on the property (the "Verona Property"). Defendant listed the Verona Property for sale in April 2018 for $529,000 but it was not sold. The Government claims there is $15,000 worth of furniture in the Verona Property. The Government also maintains that Defendant has a 2013 Lincoln MKX vehicle titled in his name, with an estimated value (by the U.S. Marshal Service) of approximately $12,400. As of the hearing, the Government had not taken action of any kind against any of the items described in this paragraph.

### III. Analysis

Defendant argues that the Government may only freeze assets pending trial where there is probable cause to believe the property is forfeitable. The Court notes that Magistrate Judges Stafford and Patti previously made probable cause findings regarding the seized assets, and Defendant does not appear to have challenged (or appear to be challenging now) that they erred in making such a finding with respect to a large percentage of the Subject Funds/funds from the Subject Vehicle.

5

Defendant's argument is that the Government should not have been permitted to seize or freeze <u>all</u> of the Subject Funds/funds from the Subject Vehicle, as approximately 27% of the Subject Funds/funds from the Subject Vehicle should be available to him.

Defendant argues that "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. United States*, 136 S.Ct. 1083, 1088 (2016). Defendant contends that, if he makes a sufficient challenge that he is prevented from paying his attorney with <u>untainted</u> assets, he is entitled by due process to a post-deprivation, pre-trial hearing. At that traceability hearing, the Government would have the burden of establishing that there is probable cause "to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment." *Kaley v. United States*, 571 U.S. 320, 134 S.Ct. 1090, 1095 (2014).

It is undisputed that a defendant must meet a two-part test to determine his entitlement to a traceability hearing. *See United States v. Jamieson*, 427 F.3d 394, 406-07 (6th Cir. 2005). First, the defendant must show he is unable to pay an attorney without the restrained funds. *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998). Second, the defendant must cast sufficient doubt on the prior probable cause finding that the restrained assets were traceable to the criminal act. *United States v. Clark*, 717 F.3d 790, 800 (10th Cir. 2013). The two-pronged test, implicitly adopted

6

in the Sixth Circuit, is referred to as the *Jones* test. *United States v. Dortch*, No. 2:17-cr-20155-SHM-11, 2018 U.S. Dist. LEXIS 70365, at *9 (W.D. Tenn. Apr. 26, 2018) (citing *Jamieson*, 427 F.3d at 406-07). When the defendant makes the required showings, the burden then shifts to the prosecution to establish, by probable cause at an adversarial hearing, that the restrained assets are traceable to the underlying offense. *Jamieson*, 427 F.3d 406 (citation omitted).

The Government makes several arguments in support of denying Defendant's Motion for a Probable Cause Hearing.[1] The Government first argues that Magistrate Judges Stafford and Patti made probable cause determinations with respect to civil forfeiture based on the Subject Funds and Subject Vehicle being "involved in a transaction" in violation of 18 U.S.C. §§ 1956 and 1957. The Government contends that this "involved in" basis for seizure subjects a broad set of assets to forfeiture. Citing *United States v. Coffman*, 574 F. App'x 541, 561 (6th Cir. 2014 ("Commingling is enough to expose the legitimate funds to forfeiture, if the commingling was done for the purpose of concealing the nature or source of the tainted funds") (citations omitted). The Government asserts that Defendant agrees and "does not make any showing that the seizure warrants lack probable cause to seize the

---

[1]Defendant indicates in the preamble of his motion that he is relying on Federal Rule of Criminal Procedure 41(g), however, Defendant makes no other mention of Rule 41(g), nor does he make any arguments based on Rule 41(g). Accordingly, the Court need not address the Government's argument that reliance on Rule 41(g) is inappropriate.

Subject Funds or Subject Vehicle for civil forfeiture." Dkt. No. 316, PgID 2455. This argument ignores that Defendant has presented the Court with an argument that only about 73% of his income since associating with Tri-County has been from Tri-County. *See* Dkt. No. 315, Exs. A and B.

The Government next argues that Defendant has not satisfied either prong the *Jones* test *vis a vis* showing that he has an inability to pay for his chosen, retained counsel. The Government asserts that Defendant has not proffered evidence that his current counsel: (a) is not his counsel of choice; (b) has not been paid; or (c) intends to stop providing services to Defendant. The Government contends that, even after the briefing and the hearing regarding Defendant's Motion for Probable Cause Hearing, the "Court has no way of knowing whether or how much these counsel have already been paid, or whether further fee payments are required, and in what amount. In other words, the record is simply bare of any evidence suggesting [Defendant's] defense is endangered by lack of funds." Relying on *United States v. Emor*, 794 F.Supp.2d 143, 149 (D.D.C. 2011). The Government concludes that Defendant's motion should be denied because he has not produced adequate evidence, information, or even an affidavit to demonstrate his need for funds to retain current counsel to try his case.

The Court agrees that Defendant has not met his burden with respect to the first

prong of the *Jones* test. Although Defendant has asserted that he no longer has an income, Defendant has not demonstrated that he lacks assets to pay his attorney. Defendant has not presented the Court with any evidence: (a) of his net worth; (b) that details or lists his assets; (c) that accounts for how the $1.9 million dollars he received from Medicare has been utilized; (d) of the legal expenses Defendant has incurred to date and expects to incur in the future; (e) indicating whether, and how much, Defendant has paid for legal expenses; or (f) that his legal counsel has threatened to cease representing Defendant. The absence of evidence of all of these things is exacerbated by the fact that Defendant failed to disclose ownership of the two properties in New York. Based on the information available to the Court, it appears there could be as much as $200,000 in equity in the properties (and the furniture).

The Court also finds that Defendant has not explained why Defendant cannot obtain employment and earn an income. Although Defendant is barred from billing a federal health care program or writing prescriptions for controlled substances, there is no evidence that Defendant is: (1) unqualified to work in any another field; or (2) disabled from employment that would not violate the terms of his bond conditions.

For the reasons set forth above, the Court concludes that Defendant has not satisfied his burden on the first prong of the *Jones* test. Accordingly, Defendant cannot meet his burden of showing he is entitled to a traceability hearing. *Jamieson*,

9

427 F.3d at 406-07.

## IV. Conclusion

For the reasons stated above,

IT IS ORDERED that Defendant's Motion for Probable Cause Hearing [Dkt. No. 315] is DENIED.

IT IS ORDERED.

                                                  s/Denise Page Hood
                                                  DENISE PAGE HOOD
Dated: March 15, 2019            UNITED STATES DISTRICT JUDGE