UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                    Case No. 17-20465

     Plaintiff,                Hon. Denise Page Hood

v.

JOSEPH BETRO and
MOHAMMED ZAHOOR,

     Defendants.

_____/

## ORDER GRANTING THE GOVERNMENT'S MOTIONS FOR ENTRY OF PRELIMINARY ORDER OF FORFEITURE [ECF Nos. 515, 516]

**I.**    **Introduction**

Following a trial by jury in January and February 2020, Defendants Joseph Betro and Mohammed Zahoor were convicted of conspiracy to commit health care fraud and health care fraud. The evidence showed that Defendants engaged in a criminal health care fraud conspiracy and they derived criminal proceeds by, among other acts of fraud, trading shots for pills, upcoding office visits, and referring Medicare beneficiaries for medically unnecessary urine drug testing.

With respect to each of Defendant Zahoor and Defendant Betro, and pursuant to Federal Rule of Criminal Procedure 32.2, 18 U.S.C. § 982(a)(7), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 21 U.S.C. § 853 (as incorporated by 18

1

U.S.C. § 982), the Government has filed a Motion for Entry of Preliminary Order of Forfeiture ("Motion").   In each Motion, the Government seeks: (1) a forfeiture money judgment; (2) direct forfeiture of assets with a nexus to the criminal conduct; and (3) forfeiture of substitute assets until the amount of assets forfeited under a final order of forfeiture reaches the amount of the forfeiture money judgment. ECF Nos. 515, 516, respectively.   The motions were fully briefed, and a hearing was held on December 16, 2020.   For the reasons that follow, both Motions are granted.

## II.   Background

As to Defendant Zahoor, the Government seeks forfeiture of his right, title, and interest in the following assets/accounts up to the identified amounts:

a)   $22,385.39 in funds from Citizens Bank Account No. 3260066137, in the name of Advanced Sleep Nuerodiagnostic;

b)   $30,826.61 in funds from Citizens Bank Account No. 326059-130-1, in the name of Mohammed Zahoor and Asma Zahoor;

c)   All funds on deposit in LPL Financial PTC Customer Individual Retirement Account (IRA), Account No. 6090-3486, held by Mohammed Zahoor (Approximately $101,415.93 as of August 7, 2018);

d)   All funds on deposit in Equity (Institutional) Trust Company Traditional Individual Retirement Account (IRA) No. 200175001/186117, held by Mohammed Zahoor (Approximately $303,204.08 as of August 7, 2018); and

e)   All funds on deposit in American Funds Mutual Funds Plan ID BRK114088, ASN 401K Plan, SSN: XXX-XX-8269, held by Mohammed Idris Zahoor (Approximately $66,764.75 as of August 7, 2018).

2

The Government has designated the referenced accounts in the specified amounts as the "Zahoor Subject Property" and the referenced accounts, generally, shall be referred to as the "Zahoor Subject Accounts." The Government also requests a forfeiture money judgment against Defendant Zahoor, in favor of the United States, in the amount of $792,633.00, which it claims represents the total amount of proceeds he obtained as a result of his criminal scheme. The money judgment amount shall be reduced by the amount forfeited as tainted proceeds or substitute assets.

As to Defendant Betro, the Government seeks forfeiture of his right, title, and interest in the following assets/accounts up to the identified amounts:

a) Twenty-Five Thousand Six Hundred Thirty-Five Dollars and Forty-Nine Cents ($25,635.49) in funds from Comerica Bank Account No. 1852711405, held in the name of Joseph Betro DO FACEP, PLLC;

b) Ninety-Three Thousand Three Hundred Nineteen Dollars andFourteen Cents ($93,319.14) in funds from Comerica Bank Account No. 6824780271, held in the name of Joseph Betro DO FACEP, PLLC, 401K Trust;

c) Three Hundred Five Dollars and Eighty-Four Cents ($305.84) in funds from Comerica Bank Account No. 9415166132, held in the name of Joseph Betro DO FACEP, PLLC;

d) Thirty-Seven Thousand Four Hundred Ten Dollars and Eighty-Seven Cents ($37,410.87) in funds from Comerica Bank Account No. 6815675720, held in the name of Joseph and Judith Betro DO FACEP, PLLC;

e)      All Funds on Deposit and All Other Items of Value in TD Ameritrade Investment Account No. 874-009792 (Approximately $104,963.06 value, as of July 12, 2017);

f)      All Funds on Deposit and All Other Items of Value in Fidelity Management Trust Account No. 216-057444 (Approximately $232,103.32 value, as of July 12, 2017);

g)      All Funds on Deposit and All Other Items of Value in Fidelity Investment Account No. Z48-751518 (Approximately $37,554.05 value, as of July 12, 2017);

h)      $32,500 Cash in lieu of 2015 Land Rover, Range Rover Evoque, VIN: SALVV2BG0FH076673 And All Sets of Keys to Operate the Vehicle; and

i)      $248,141.27 held in lieu of Real property located at 41718 Chesterfield Court, Novi, Michigan.

The Government has designated the referenced accounts in the specified amounts as the "Betro Subject Property" and the referenced accounts, generally, shall be referred to as the "Betro Subject Accounts."  The Government also requests a forfeiture money judgment against Defendant Betro, in favor of the United States, in the amount of $1,847,767.00, which it claims represents the total amount of proceeds he obtained as a result of his criminal scheme. The money judgment amount shall be reduced by the amount forfeited as tainted proceeds or substitute assets.

The Government claims that the Zahoor Subject Property and the Betro Subject Property are subject to forfeiture as (i) proceeds obtained, directly or indirectly, as a result of each Defendant's respective criminal scheme, or (ii)

4

substitute property[1] to satisfy a forfeiture money judgment. The Government primarily relies upon the tracing conducted by Steve Bowler, and the Government attaches a declaration of Bowler to each of the Motions. Bowler did not testify at trial.

## III.   Applicable Law

Criminal forfeiture as part of a defendant's sentence is to be imposed as provided by statute. *United States v. Hall*, 411 F.3d 651 (6th Cir. 2005) (citing *Libretti v. United States*, 516 U.S. 29, 49, 116 S. Ct. 356 (1995)); 28 U.S.C. §2461(c). 18 U.S.C. §982(a)(7) requires that forfeiture is based on the proceeds "traceable" to the underlying offense. Under 18 U.S.C. § 982(a)(7), a defendant must "forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." 18

---

[1] The term "substitute property" refers to property that the Government is unable to link to a crime giving rise to the forfeiture, but which may be forfeited in substitution for such property if the directly forfeitable property cannot be located or is otherwise unavailable. *See United States v. Hall*, 434 F.3d 42, 60 (1st Cir. 2006); *see also United States v. Carroll*, 346 F.3d 744, 749 (7th Cir. 2003) (defendant may be ordered to forfeit "every last penny" he owns as substitute assets to satisfy money judgment). 21 U.S.C. § 853(p) provides that the court shall order the forfeiture of substitute property where, as a result of any act or omission of the defendant, property subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to or deposited with, a third party; or has been commingled with other property which cannot be divided without difficulty (among other grounds). Once the Government establishes the unavailability of directly forfeitable property, the Court must order forfeiture of substitute property up to the value of the directly forfeitable property. See 21 U.S.C. § 853(p)(2); *United States v. Gordon*, 710 F.3d 1124, 1166 (10th Cir. 2013). This provision provides a tool to aid in forfeiture where the defendant no longer has the actual dollars or any traceable property that was derived from proceeds of the offense. There is no nexus or tracing requirement for the forfeiture of substitute property. *See United States v. Smith*, 656 F.3d 821, 828 (8th Cir. 2011).

U.S.C. § 982(a)(7). Under 18 U.S.C. § 981(a)(1)(C), together with 28 U.S.C. § 2461(c), a person convicted of any offense constituting "specified unlawful activity," which includes any act or activity constituting a federal health care offense, or a conspiracy to commit such offense, must forfeit any property, real or personal, which constitutes or is derived from the proceeds of that offense. 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7)(F). Pursuant to both Rule 32.2(b)(1)(A) and case law, the Government must establish a nexus between the property to be forfeited and the offense of conviction.

The Government has the burden to establish whether property can be forfeited by a preponderance of the evidence. *United States v. Smith*, 749 F3d 465, 488 (6th Cir 2014), citing *United States v. Jones*, 502 F3d 388, 391 (6th Cir 2007). In making the determination regarding forfeiture, the Court may rely on evidence already in the record, including evidence introduced at trial, as well as any additional evidence or information submitted by the parties and "accepted by the court as relevant and reliable." Rule 32.2(b)(1)(B). Since forfeiture is part of sentencing, reliable hearsay may be used to satisfy the government's burden of proof by a preponderance of the evidence. See Fed. R. Evid. 1101(d)(3); *Jafari*, 85 F. Supp. 3d at 684-85.

In cases involving health care fraud schemes, the term "proceeds" is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable

thereto, and is not limited to the net gain or profit realized from the offense." 18

U.S.C. § 981(a)(2)(A); *see also United States v. Warshak*, 631 F.3d 266, 332 (6th

Cir. 2010). "Gross proceeds" include the total amount of money brought in through

the fraudulent activity, with no costs deducted or set-offs applied. *See United States*

*v. Jafari*, 85 F. Supp. 3d 679, 687 (W.D.N.Y. 2015) (defendant perpetrating health

care fraud was not entitled to reduction in amount of money judgment as credit for

services actually rendered).

A convicted defendant also must forfeit the gross proceeds of the entire

scheme including uncharged executions of that scheme. *Id*. at 687-88 (health care

fraud defendant liable for the gross proceeds of the entire scheme, not merely the

proceeds of the four counts of conviction); *United States v. Boesen*, 473 F. Supp. 2d

932, 953 (S.D. Iowa 2007) (health care fraud defendant must forfeit the proceeds of

the entire scheme, not just the proceeds involved in the 82 counts of conviction).

Similarly, a defendant convicted of conspiracy must forfeit the proceeds of the entire

conspiracy—it is not necessary for the government to charge as a substantive offense

every aspect of the conspiracy. *See United States v. Hasson*, 333 F.3d 1264, 1279

(11th Cir. 2003).

Defendant Betro argues that the Sixth Circuit and other courts have held that

the amount of the defendant's money forfeiture judgment should be reduced by the

fair market value of the services he rendered. Citing *United States v. Washington*,

715 F.3d 975, 984 (6th Cir. 2013) (the amount of loss "is to be reduced by the fair market value of actual services rendered to the victim."); *United States v. Agbebiyi*, 575 Fed. Appx. 624, 630 (6th Cir. 2014) (using the "amount actually paid to the clinics by Medicare as the loss figure"). *See also United States v. Mahmood*, 820 F3d 177 (5th Cir 2015).  In *Mahmood*, the amount of loss suffered was reduced by the fair market value of the legitimate services rendered to patients.  The court held that "Mahmood carried his burden at sentencing to show that his hospitals rendered legitimate services to patients and that Medicare would have paid substantial sums for those services had he not fraudulently billed them." *Id.* at 194.

## IV.    Analysis

The Government states that the Medicare data presented at trial showed that between August 25, 2011, and July 11, 2017, the Tri-County network physicians caused Medicare to be billed approximately $108,926,758 and Medicare reimbursed the Tri-County network approximately $36,645,577 for these claims. The Tri-County network then paid Defendants a portion of the reimbursements.  The Government contends that Defendant Betro was paid a total of approximately $1,847,767 and Defendant Zahoor was paid a total of approximately $792,633 by the Tri-County network, with each total based on the fraudulent amounts that they allegedly caused to be billed to Medicare for medically unnecessary facet joint injections and lengthy office visits that did not occur.  The Government maintains,

and the Court agrees, that the Government presented abundant evidence and testimony of the overall healthcare fraud scheme at trial, Defendant Zahoor's and Defendant Betro's roles in the scheme, and how they obtained a portion of the proceeds of the scheme.

The Government claims that the proposed money judgments represent reasoned estimates of the proceeds that Defendant Zahoor and Defendant Betro received for participation in the healthcare fraud conspiracy for which they were convicted. *Honeycutt*, 137 S.Ct. at 1635 (forfeiture is limited to the property the defendant himself actually obtained as a result of the crime). This included payment for performing medically unnecessary facet joint injections in exchange of opioid prescriptions, upcoding office visits, referring beneficiaries to providers that were specified by Mashiyat Rashid in exchange for kickbacks, and causing those services to be billed to Medicare.

The Government asserts that Defendant Betro transferred fraudulently obtained Medicare reimbursements into Comerica Bank Account No. 1852711405. From there, the fraud proceeds were transferred into the following accounts: (i) Comerica Bank Account No. 6824780271, (ii) Comerica Bank Account No. 9415166132, and (iii) Comerica Bank Account No. 6815675720, (iv) TD Ameritrade Investment Account No. 874-009792, (v) Fidelity Management Trust Account No. 216-057444, and (vi) Fidelity Investment Account No. Z48-751518.

Bowler traced approximately $1,847,767 from the Tri-County network into Defendant Betro's financial accounts, as well as to the purchase of: (a) a 2015 Land Rover, Range Rover Evoque, VIN: SALVV2BG0FH076673, and (b) real property located at 41718 Chesterfield Court, Novi, Michigan. Bowler traced approximately $1,847,767 from the Tri-County network into Defendant Betro's financial accounts.

The Government asserts that Defendant Zahoor transferred fraudulently obtained Medicare reimbursements into two accounts: (i) Citizens Bank Account No. 3260066137, and (ii) Citizens Bank Account No. 326059-130-1. From there, the fraud proceeds were transferred into the following investment accounts: (a) LPL Financial PTC Customer Individual Retirement Account (IRA), Account No. 6090-3486, (b) Equity (Institutional) Trust Company Traditional Individual Retirement Account (IRA) No. 200175001/186117, and (c) American Funds Mutual Funds Plan ID BRK114088, ASN 401K Plan, SSN: XXX-XX-8269. Bowler traced approximately $792,633 from the Tri-County network into Defendant Zahoor's financial accounts.

The Government argues that the Tri-County network was designed and operated as a model of fraud, citing co-defendant Mashiyat Rashid's testimony at trial. Rashid explained that he created the Tri-County entities because "it was very easy to commit fraud and generate a large sum of money." (ECF No. 441, Trial Tr. 14:13-18). He did not operate a legitimate health care business because "the margins

are just not there . . . in terms of profit." (Id. at 15:6-11).  For this reason, the Government argues that, even if Defendant Betro and/or Defendant Zahoor provided some legitimate services during the health care fraud conspiracy, that does not alter the calculation of the appropriate money judgment. The "gross proceeds" of their criminal activity are "the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied." *Poulin*, 461 F. App'x at 288 (holding that physician perpetrating health care fraud was not entitled to reduction in amount of money judgment as credit for services actually rendered).

The Government relies on the Sixth Circuit's holding in *Warshak* that the argument that certain acts during the course of the conspiracy "were legitimate gains no traction" when "the very nucleus of its business model remained rotten and malignant." *Warshak*, 631 F.3d at 332.  For that reason, the Government contends that forfeiture of all revenues of Defendant Betro and Defendant Zahoor, "including money generated through supposedly legitimate transactions, was appropriate." *Id*. at 333.

As to seeking substitute assets, the Government states that, from the time Defendant Zahoor joined the Tri-County network, he received the entirety of his compensation by deposit into an operating account for his separate business, Advanced Sleep Diagnostics, in order to disguise where the funds were earned. (See Trial GSXs 1005, 197).  It argues that Defendant Zahoor used proceeds of the

conspiracy for: $40,000 on a luxury pool, $18,000 towards the ownership of a Lexus automobile, $144,000 on real property located on West 12 Mile Rd., and $117,000 on real property located on Chesapeake Dr. in Novi, Michigan (ECF No. 443, Trial Tr. 47:14-51:8; GSXs 77, 78, 79, 80, 82).

Similarly, the Government asserts that, from the time Defendant Betro joined the Tri-County network, he received the entirety of his compensation by deposit into an operating account for his separate business, Joseph Betro DO FACEP, PLLC, in order to disguise the fact that these funds were earned through the Tri-County network. (Trial GSXs 1005, 1008, 1022).  The Government states that Defendant Betro used proceeds of the conspiracy for: (i) $27,046 as collateral for a line of credit used to purchase a 2015 Range Rover Evoque, (ii) $24,094 on gold bars, and (iii) $112,000 on lakefront property in Verona Beach, New York. (ECF No. 443, Trial Tr. 47:14-51:8; GSXs 65, 69, 70).

The Government contends both Defendant Zahoor and Defendant Betro attempted to hide assets from the Government (and the Court).  Defendant Zahoor filed a motion for return of funds seized from the two Citizens Bank accounts and submitted a sworn affidavit to the Court, in which he stated "[m]y current net worth is negative and I have no savings." (ECF No. 248-2).  The Government asserts that Defendant Zahoor lied, as he was hiding from the Court and the United States that he held approximately $500,000 in the three investment accounts, which he agreed

12

to restrain only after the funds were discovered by the Government (ECF No. 282), and are now sought by the Government.

Defendant Betro filed a motion for return of seized funds or permission to sell encumbered real property (ECF No. 315), stating stated that he has "no ability to pay hired counsel without the proceeds from the sale of their residence, or the release of other cash from pretrial restraint." (ECF No. 315, PageID. 2430). The Government contends that Defendant Betro lied because, as the Court stated in denying his motion, "Defendant failed to disclose ownership of the two properties in New York. Based on the information available to the Court, it appears there could be as much as $200,000 in equity in the properties (and the furniture)." (ECF No. 327, PageID. 2709). The Court also noted that Defendant Betro failed to present any evidence "that accounts for how the $1.9 million dollars he received from Medicare has been utilized." *Id.*

The Government claims it is only seeking to forfeit as tainted proceeds those assets that it can trace. It states that the remaining funds should be forfeited as substitute assets to satisfy the forfeiture money judgment as to each of Defendant Zahoor and Defendant Betro. As set forth in the Bowler Declaration (and the exhibits thereto) regarding Defendant Zahoor, the Government states that the following funds in each of Defendant Zahoor's account are direct proceeds of the fraud scheme:

a.      $22,385.39 in funds from Citizens Bank Account No. 3260066137;

    b.        $6,864.60 in funds from Citizens Bank Account No. 326059-130-1;

    c.        All funds on deposit in LPL Financial PTC Customer Individual Retirement Account (IRA), Account No. 6090-3486 (Approximately $101,415.93);

    d.        $29,346.57 in Equity (Institutional) Trust Company Traditional Individual Retirement Account (IRA) No. 200175001/186117; and

    e.        All funds on deposit in American Funds Mutual Funds Plan ID BRK114088, ASN 401K Plan, SSN: XXX-XX-8269 (Approximately $66,764.75).

The Government states that it can trace Medicare proceeds and kickbacks through various bank accounts controlled by Defendant Zahoor and into each of the accounts the Government is seeking to forfeit. The Court finds that this financial analysis establishes a reasoned basis for direct forfeiture of the Zahoor Subject Property.

    The Government seeks forfeiture of funds seized/restrained for each of the accounts and claims the funds in both Citizens Bank accounts are direct proceeds of the fraud scheme. The funds deposited into the investment accounts are also direct proceeds of the fraud scheme, and any capital gains made on the proceeds are indirect proceeds of the fraud scheme. *See* 18 U.S.C. § 982(a)(7); *see also United States v. Farkas*, 2011 WL 5101752, *3 (E.D. Va. 2011) (any money defendant derived from a business that would not have existed but for his fraud is property obtained "indirectly" from the fraud).

14

The Government also seeks forfeiture of the following funds not forfeited as tainted proceeds as substitute property to satisfy the $792,633 requested forfeiture money judgment against Defendant Zahoor:

a.    $23,962.01 in funds from Citizens Bank Account No. 326059-130-1;

b.    Approximately $273,857.51 in Equity (Institutional) Trust Company Traditional Individual Retirement Account (IRA) No. 200175001/186117.

As set forth in the Bowler Declaration (and the exhibits thereto) regarding Defendant Betro, the Government states that the following funds in each of Defendant Betro's account are direct proceeds of the fraud scheme:

a.    $8,689.56 in funds from Comerica Bank Account No. 1852711405;

b.    $25,372.00 in funds from Comerica Bank Account No. 6824780271;

c.    $37,410.87 in funds from Comerica Bank Account No. 6815675720;

d.    $52,949.95 in Fidelity Management Trust Account No. 216-057444;

e.    $47,833.34 in Fidelity Management Trust Account No. 216-057444;

f.    $32,213.50 in Fidelity Investment Account No. Z48-751518;

g.    $27,045.78 Cash in lieu of 2015 Land Rover, Range Rover Evoque, VIN: SALVV2BG0FH076673; and,

h.    $56,118.80 in lieu of Real property located at 41718 Chesterfield Court, Novi, Michigan.

The Government states that it can trace Medicare proceeds and kickbacks through various bank accounts controlled by Defendant Betro and into each of the accounts

the Government is seeking to forfeit. The Court finds that this financial analysis establishes a reasoned basis for direct forfeiture of the Betro Subject Property.

The Government also seeks forfeiture of the following funds not forfeited as tainted proceeds as substitute property to satisfy the $1,847,767 requested forfeiture money judgment against Defendant Betro:

a.  $16,945.93 in funds from Comerica Bank Account No. 1852711405;

b.  $67,947.14 in funds from Comerica Bank Account No. 6824780271;

c.  $305.84 in funds from Comerica Bank Account No. 9415166132;

d.  All Funds on Deposit and All Other Items of Value, not forfeited as tainted proceeds, in Fidelity Management Trust Account No. 216-057444 (Approximately $52,013.11);

e.  All Funds on Deposit and All Other Items of Value, not forfeited as tainted proceeds, in Fidelity Management Trust Account No. 216-057444 (Approximately $184,269.98);

f.  All Funds on Deposit and All Other Items of Value , not forfeited as tainted proceeds, in Fidelity Investment Account No. Z48-751518 (Approximately $5,340.55);

g.  $5,454.22 Cash in lieu of 2015 Land Rover, Range Rover Evoque, VIN: SALVV2BG0FH076673; and

h.  $192,022.47 Cash in lieu of Real property located at 41718 Chesterfield Court, Novi, Michigan.

Defendant Zahoor objects to the amount of the forfeiture order and the request for substitute assets.  He acknowledges that property may be subject to forfeiture when it is the direct or indirect proceeds of the crime of conviction, 21 U.S.C. §

853(a)(1), but maintains that the property must bear a "sufficient nexus" or "substantial connection" to the underlying offense. *United States v. Smith*, 966 F.2d 1045, 1055 (6th Cir. 1992). *See also* F.R.Cr.P. 32.2(b)(1) ("the court must determine whether the government has established the requisite nexus between the property and the offense"). Defendant Zahoor argues that the Government must prove forfeiture by a preponderance of the evidence, *Smith*, 966 F.2d at 1052, and that "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C. § 982(a)(7).

Before the Court orders such a forfeiture, the Government must show that all property subject to forfeiture, "as a result of any act or omission of the defendant - (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p).

Defendant Zahoor complains that the Government seeks all the money he received from Tri-County Clinic from January 20, 2012 to December 31, 2016, equaling $792,633.00, which is not consistent with the Government's own evidence

that shows seventy-eight and one-tenth percent (78.1%) of the patient visits he conducted included facet injections during that same time period. ECF No. 526, Ex. 1.  Defendant Zahoor also contends that the Government's evidence regarding quantitative urinalysis does not begin until 2014, two years after the start of the money that the Government seeks to forfeit. *Id*. at Ex. 2.  For these reasons, Defendant Zahoor argues that the Government has not shown that one hundred percent (100%) of the money paid to him was gross proceeds from the commission of the offense.

Defendant Zahoor also claims that the Court should make no decision of substitute assets without evidence and an opportunity to be heard on the issue. Under the terms of 21 U.S.C. § 853(p), substitution of assets cannot be done without certain findings being made. Defendant Zahoor does not believe the Government's affidavit demonstrates that all of the accounts listed as "Direct Forfeiture of Proceeds" fall into any of the categories under 21 U.S.C. § 853(p) as a result of an act or omission of the Defendant.

Defendant Betro contends that the Government has not met its burden of demonstrating – and grossly overstates – the amount of proceeds traceable to him. He claims that he provided a significant amount of legitimate medical services to his patients. He argues that the costs related to the fair market value of his legitimate services are not proceeds of his conviction and cannot be the basis for an order of

forfeiture.  He states that a hearing is required in order to determine the correct amount subject to forfeiture.

As to the substituting of assets, Defendant Betro asserts the Court should apply the Supreme Court's ruling in *Honeycutt*, where the court held that criminal forfeiture money judgment is limited to the actual amount of proceeds received by a defendant in a conspiracy. In *Honeycutt*, the federal forfeiture statute, 21 U.S.C. §853, was analyzed. 21 U.S.C. §853 provides for the forfeiture of "any property constituting, or derived from, any proceeds the person obtained directly or indirectly, as the result of" certain drug crimes. *Id*. The Supreme Court rejected joint and several liability of a forfeiture money judgment and held that forfeiture is "limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt*, 137 S.Ct. at 1635.  Again, Defendant Betro insists that there should be no decision of substitute assets without evidence and an opportunity to be heard on the issue because the terms of 21 U.S.C. § 853(p) require that certain findings be made. Defendant Betro claims that the Government, via their affidavit, has not shown that all of the accounts listed fall into any of the categories under 21 U.S.C. § 853(p) as a result of an act or omission of Defendant Betro.

As the Government argues, neither Defendant contests the Government's motion to forfeit specific funds as direct proceeds but instead focus exclusively on the money judgment amount and forfeiture of substitute assets. It claims that the

amount of gross proceeds each Defendant received from the Tri-County network ($792,633.00 for Defendant Zahoor, $1,847,767.00 for Defendant Betro) is the appropriate money judgment amount for that defendant.  The Court agrees.

Both Defendants were convicted for participating in a health care fraud scheme that permeated the Tri-County network and/or received kickbacks for referrals to the Tri-County network for services other than facet joint injections that were billed to Medicare.  Neither Defendant has offered evidence that establishes that any of the services he provided were legitimate, medically necessary services, so there is no basis for the Court to reduce the amount of gross proceeds each Defendant received by the fair market value any services he may have legitimately rendered. *See Washington* and *Mahmood, supra*.

The Government also has presented evidence that establishes, by at least a preponderance of the evidence, that Defendants billed for more hours than they worked, received kickbacks for referrals, and/or gave other, non-facet, injections. As set forth in *Warshak*, the argument that certain acts during the conspiracy "were legitimate gains no traction" where, as Rashid made clear was the situation in this case, "the very nucleus of its business model remained rotten and malignant." *Warshak*, 631 F.3d at 332.

As to substitute assets, the forfeiture of certain assets as substitute assets is justified under 21 U.S.C. § 853(p) because, as discussed above, Defendant Zahoor

and Defendant Betro actively hid, dissipated, transferred, and commingled the criminal proceeds.  Evidence presented at trial and described in detail above shows the ways Defendant Zahoor and Defendant Betro made criminal proceeds unavailable for forfeiture.

For the reasons stated above, the Court grants the Government's Motions.

## V.     Conclusion

Accordingly, and for the reasons set forth above,

IT IS ORDERED that the Government's Motions for Entry of Preliminary Order of Forfeiture [ECF Nos. 515, 516] are GRANTED.

IT IS SO ORDERED.

Date: July 5, 2022                              s/Denise Page Hood
                                                Hon. Denise Page Hood
                                                United States District Court Judge